FILED

2013 APR 17 PM 4:59

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2013 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>YAROSLAV PROSHAK,<br>   aka "Steven Proshak,"<br>SERGEY ALEKSEYEVICH MUMJIAN,<br>   aka "Serge Mumjian,"<br>   aka "Sergey A. Mumdzhyan," and<br>SHARETTA MICHELE WALLACE,<br>   aka "Michele Wallace,"<br><br>          Defendants. | CR No. 13- 0264<br><br>**I N D I C T M E N T**<br><br>[18 U.S.C. § 1349: Conspiracy to Commit Health Care Fraud; 18 U.S.C. § 1347: Health Care Fraud; 18 U.S.C. § 2(b): Causing an Act to be Done; 18 U.S.C. § 982(a)(7), 21 U.S.C. § 853, and 28 U.S.C. § 2461(c): Forfeiture] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1349]

A.   INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

The Conspirators

    1.    Defendant YAROSLAV PROSHAK ("PROSHAK"), also known as ("aka") "Steven Proshak," was the Chief Executive Officer,

1. Secretary, and Registered Agent of ProMed Medical Transportation, Inc. ("ProMed"), an ambulance transportation company located in Gardena, California.

2. Defendant SERGEY ALEKSEYEVICH MUMJIAN ("MUMJIAN"), aka "Serge Mumjian," aka "Sergey A. Mumdzhyan," was the Office Manager and Biller for ProMed.

3. Defendant SHARETTA MICHELE WALLACE ("WALLACE"), aka "Michele Wallace," was the General Manager of ProMed.

4. Between on or about May 8, 2008, and on or about January 6, 2011, ProMed submitted to Medicare claims totaling approximately $5,992,414.50 for ambulance transportation and related services, and Medicare paid ProMed approximately $3,178,116.41 on those claims.

The Medicare Program

5. The Medicare Program ("Medicare") was a federal health care benefit program, affecting commerce, that provided benefits to individuals who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

6. Medicare was subdivided into multiple parts. Medicare Part B covered, among other things, ambulance services.

7. Individuals who qualified for Medicare benefits were commonly referred to as "Medicare beneficiaries." Each Medicare beneficiary was given a Medicare identification number.

8. Medicare covered ambulance services only if furnished to a beneficiary whose medical condition at the time of transport was

such that ambulance transportation was medically necessary. A patient whose condition permitted transport in any type of vehicle other than an ambulance did not qualify for Medicare payment. Medicare payment for ambulance transportation depended on the patient's condition at the actual time of the transport regardless of the patient's diagnosis. To be deemed medically necessary for payment, the patient must have required both the transportation and the level of service provided.

9. Ambulance transportation was only covered when the patient's condition required the vehicle itself or the specialized services of the trained ambulance personnel. A requirement of coverage was that the needed services of the ambulance personnel were provided and clear clinical documentation validated their medical need and their provision in the record of the service, which was usually the run sheet.

10. In the absence of an emergency condition, ambulance services were covered only under the following circumstances: (1) the patient being transported could not be transported by any other means without endangering the individual's health; or (2) the patient was before, during, and after transportation, bed confined. For purposes of Medicare coverage, "bed confined" meant the patient met all of the following three criteria: (1) unable to get up from bed without assistance; (2) unable to ambulate; and (3) unable to sit in a chair (including a wheelchair).

11. A thorough assessment and documented description of the patient's current state was essential for coverage. All statements about the patient's medical condition or bed confined status must

have been validated in the documentation using contemporaneous, objective observations and findings.

12. For ambulance services to have been covered by Medicare, the transport must have been to the nearest institution with appropriate facilities for the treatment of the illness or injury involved. The term "appropriate facilities" meant that the institution was generally equipped to provide care necessary to manage the illness or injury involved. Covered destinations for non-emergency transports included: (1) hospitals; (2) skilled nursing facilities; (3) dialysis facilities; (4) from a skilled nursing facility to the nearest supplier of medically necessary services not available at the skilled nursing facility where the beneficiary was a resident, including the return trip, when the patient's condition at the time of transport required ambulance services; and (5) the patient's residence only if the transport was to return from a hospital and the patient's condition at the time of transport required ambulance services.

13. CMS contracted with Medicare Administrative Contractors ("MACs") to process claims for payment. The MAC that processed and paid Medicare Part B claims in Southern California, starting in October 2007, was Palmetto GBA.

14. To bill Medicare for services rendered, a provider submitted a claim form (Form 1500) to Palmetto GBA. When a Form 1500 was submitted, usually in electronic form, the provider certified:

    a.    the contents of the form were true, correct and complete;

    b.    the form was prepared in compliance with the laws and regulations governing Medicare; and

  c. the services being billed were medically necessary.

  15. A Medicare claim for payment was required to set forth, among other things, the following: the beneficiary's name and unique Medicare identification number; the item or service provided; the cost of the item or service; and the name and Unique Physician Identification Number ("UPIN") and/or the National Provider Identifier ("NPI") of the physician who prescribed or ordered the item or service.

B. THE OBJECT OF THE CONSPIRACY

  16. Beginning on or about May 8, 2008, and continuing through on or about January 6, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendants PROSHAK, MUMJIAN, and WALLACE, together with others known and unknown to the Grand Jury, knowingly combined, conspired, and agreed to commit health care fraud, in violation of Title 18, United States Code, Section 1347.

C. THE MANNER AND MEANS OF THE CONSPIRACY

  17. The object of the conspiracy was carried out, and to be carried out, in substance, as follows:

  a. On or about April 10, 2008, defendant PROSHAK opened two corporate bank accounts for ProMed at Bank of America, account numbers xxxxx-042867 and xxxxx-45440.

  b. On or after April 10, 2008, defendant PROSHAK became a signatory on an existing corporate bank account for ProMed at Bank of America, account number xxxxx-06672.

  c. On or about May 1, 2008, defendant PROSHAK purchased ProMed.

  d. On or about May 6, 2008, defendant PROSHAK filed a Statement of Information with the State of California as the Chief Executive Officer, Secretary, and Registered Agent of ProMed.

  e. On or about July 4, 2008, defendant PROSHAK executed and submitted an electronic funds transfer agreement to Medicare, requesting that all future reimbursements from Medicare be directly deposited into ProMed's Bank of America account, account number xxxxx-06672.

  f. Defendants PROSHAK, MUMJIAN, and WALLACE, together with others known and unknown to the Grand Jury, thereafter provided ambulance transportation services, through ProMed, to Medicare beneficiaries knowing that the beneficiaries' medical condition did not necessitate the ambulance transportation services.

  g. Defendants PROSHAK, MUMJIAN, and WALLACE instructed ProMed employees to document a reason justifying ambulance transportation services on run sheets even if one did not exist.

  h. Defendant MUMJIAN and WALLACE instructed ProMed employees not to write certain words, such as "walk" or "assisted to gurney," on run sheets because Medicare would not pay for the ambulance transportation services if these words were present.

  i. Defendants PROSHAK, MUMJIAN, and WALLACE, together with others known and unknown to the Grand Jury, knowingly submitted, and caused the submission of, false and fraudulent claims to Medicare on behalf of ProMed for these medically unnecessary ambulance transportation services,

  j. As a result of the submission of false and fraudulent claims, Medicare made payments to ProMed's corporate bank account at Bank of America, account number xxxxx-06672.

k.  Defendant PROSHAK then transferred and disbursed, and caused the transfer and disbursement of, monies from ProMed's corporate bank account to himself and others, including defendants MUMJIAN and WALLACE.

l.  Defendants PROSHAK, MUMJIAN, and WALLACE, together with others known and unknown to the Grand Jury, concealed, and attempted to conceal, their submission of false and fraudulent claims to Medicare by altering and causing the alteration of run sheets and other documentation related to the ambulance transportation services provided by ProMed.

COUNTS TWO THROUGH SIX

[18 U.S.C. §§ 1347, 2(b)]

A. INTRODUCTORY ALLEGATIONS

18. The Grand Jury incorporates by reference and re-alleges paragraphs 1 through 15 above as though set forth in their entirety here.

B. THE SCHEME TO DEFRAUD

19. Beginning on or about May 8, 2008, and continuing through on or about January 6, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendants PROSHAK, MUMJIAN, and WALLACE, together with others known and unknown to the Grand Jury, knowingly, willfully, and with intent to defraud, executed, and attempted to execute, a scheme and artifice: (a) to defraud a health care benefit program, namely Medicare, as to material matters in connection with the delivery of, and payment for, health care benefits, items, and services; and (b) to obtain money from Medicare by means of materially false and fraudulent pretenses and representations and the concealment of material facts in connection with the delivery of, and payment for, health care benefits, items, and services.

C. MEANS TO ACCOMPLISH THE SCHEME TO DEFRAUD

20. The fraudulent scheme operated, in substance, as described in Paragraph 17 of this Indictment, which is hereby incorporated by reference as if stated in its entirety here.

D. THE EXECUTION OF THE FRAUDULENT SCHEME

21. On or about the dates set forth below, within the Central District of California, and elsewhere, defendants PROSHAK, MUMJIAN, and WALLACE, together with others known and unknown to the Grand

Jury, for the purpose of executing and attempting to execute the fraudulent scheme described above, knowingly and willfully submitted and caused to be submitted to Medicare the following false and fraudulent claims for payment for Basic Life Support, non-emergency ambulance transportation (Code A0428):

| COUNT | BENEFICIARY | CLAIM NUMBER | APPROX. DATE SUBMITTED | APPROX. AMOUNT OF CLAIM |
|---|---|---|---|---|
| TWO | M.N. | 551109245852050 | 09/02/2009 | $891 |
| THREE | R.P. | 551109334911780 | 11/30/2009 | $918 |
| FOUR | A.L. | 551110078829510 | 03/19/2010 | $864 |
| FIVE | G.G. | 551110265739110 | 09/22/2010 | $418.50 |
| SIX | R.T. | 551110270510810 | 09/27/2010 | $810 |

FORFEITURE ALLEGATION

[18 U.S.C. § 982(a)(7), 21 U.S.C. § 853,

and 28 U.S.C. § 2461(c)]

22. The Grand Jury hereby realleges and incorporates by reference Counts One through Six of this Indictment as though fully set forth herein, for the purpose of alleging forfeiture, pursuant to the provisions of Title 18, United States Code, Section 982(a)(7).

23. Counts One through Six of this Indictment allege acts or activities constituting federal health care fraud offenses pursuant to Title 18, United States Code, Sections 1347 and 1349. Pursuant to Title 18, United States Code, Section 982(a)(7), upon conviction of a federal health care fraud offense, defendants PROSHAK, MUMJIAN, and WALLACE, shall forfeit to the United States of America:

a. All right, title and interest in any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offense; and

b. A sum of money equal to the total amount of gross proceeds derived from such offense.

24. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c), a defendant so convicted shall forfeit substitute property, up to the value of the amount described in paragraph 23, if, by any act or omission of said defendant, the property described in paragraph 23, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to or deposited with a third party; has been placed beyond the jurisdiction of this court; has been substantially

diminished in value; or has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/
Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

*Dom*
Dorothy C. Kim
Dep. Chief, Crim. Div. For.

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

RICHARD E. ROBINSON
Assistant United States Attorney
Chief, Major Frauds Section

BEN SINGER
Deputy Chief, Fraud Section
United States Department of Justice

BENTON CURTIS
Assistant Chief, Fraud Section
United States Department of Justice

BLANCA QUINTERO
Trial Attorney, Fraud Section
United States Department of Justice